# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | CRIMINAL NO. 3:2006-29 |
| | ) | |
| CONSESOR M. CHEATHAM, | ) | |
| a/k/a "Skinny", a/k/a "Blue", | ) | |
| MARISSA M. CHEATHAM, a/k/a "Shell", | ) | |
| MAURICE R. CHEATHAM, a/k/a "Reese", | ) | |
| ANDREW S. EDWARDS, a/k/a "Drew", | ) | |
| KELLY L. HUFF, | ) | |
| BRAHEEM HUGER, a/k/a "Heem", | ) | |
| JENNIFER MCDADE, | ) | |
| NATHAN L. WILLS, a/k/a "Nate", | ) | |
| | ) | JUDGE GIBSON |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on Defendant McDade's Motions *in Limine* (Document No. 295). McDade is the sole defendant who is proceeding to trial; all other defendants have pled guilty.

McDade's first motion is a motion to exclude evidence of guilty pleas by non-testifying co-defendants. McDade argues that if one of her co-defendants has pled guilty, but is not testifying against her at trial, the fact that that co-defendant pled guilty should not be permitted to be introduced into evidence. McDade's Motion, ¶¶ 3-5. McDade argues that guilty pleas of co-defendants are not admissible to prove McDade's guilt, and the Court agrees that this is the correct interpretation of the law, *see Gov't of the Virgin Islands v. Mujahid*, 990 F.2d 111, 115 (3d Cir. 1993), but McDade argues

further that until a co-defendant has testified, the fact of that co-defendant's plea of guilty should be "inadmissible for any purpose." McDade's Motion, p. 5.

The Government in its Response (Document No. 306), pp. 1-2, indicates that it will not introduce the fact of a guilty plea by nontestifying co-defendants, but argues that references to the guilty pleas of those co-defendants who will testify should be permitted in opening statements and that after their testimony is elicited, a limiting instruction should be given to cure any possible defects. *Id.*

The Third Circuit has recognized the various usages for the fact of a co-defendant's plea of guilty:

> It is well-established that a co-defendant's guilty plea is not admissible to prove the defendant's guilt. *United States v. Werme*, 939 F.2d 108, 113 (3d Cir.1991), cert. denied, 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992); *Bisaccia v. Attorney General of the State of N.J.*, 623 F.2d 307, 312 (3d Cir.), cert. denied, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *United States v. Toner*, 173 F.2d 140, 142 (3d Cir.1949). However, a guilty plea may be admitted for other, permissible purposes, such as bringing to the jury's attention facts bearing upon a witness' credibility. *Werme*, 939 F.2d at 113-14. We have held that a co-defendant's guilty plea is admissible, for example, to rebut a defense assertion that a witness was acting as a government agent when he engaged in the activities forming the basis of his guilty plea, *id.* at 114, to dampen anticipated attacks on the credibility of a government witness and foreclose any suggestion that the government was concealing evidence, *United States v. Gambino*, 926 F.2d 1355, 1363 (3d Cir.), cert. denied, 501 U.S. 1206, 111 S.Ct. 2800, 115 L.Ed.2d 973 (1991), and to respond to a defense attack on the credibility of a government witness, *id.* at 1365-66.

*Government of Virgin Islands v. Mujahid*, 990 F.2d 111, 115 (3d Cir. 1993). Therefore, a guilty plea of a testifying co-defendant does have usefulness in the trial evidence beyond its prejudicial nature to cause jurors to believe the defendant being tried is in fact guilty. To ensure the jury's understanding of the limited purpose of such evidence, a "court must instruct the jury regarding the limited purpose for which that evidence may be used." *Id.* at 116 (citation omitted). In order to comply with this

2

mandate, the Court hereby notifies that parties that it will instruct the jury using Third Circuit Model Jury Instruction 2.22 entitled "Witness Who Has Pleaded Guilty to the Same or Related Charges." To the extent that McDade objects to any reference of guilty pleas by co-defendants during *voir dire* or opening statements, the Court believes reference to the fact of a guilty plea is permissible in *voir dire* because reference to such facts is best understood as a pendulum that swings both ways: the Government and McDade can reference a co-defendant's guilty plea to determine if a potential juror would be more or less likely to convict because of such a fact. Furthermore, as to references to guilty pleas in opening statements, the Court agrees with the Government that such statements are not evidence and the jury will be reminded of such through the Court's instructions. *See* Government's Response, p. 2.

Therefore, the Defendant's motion is granted in part to the extent that the Government consents not to utilize the fact of a non-testifying co-defendant's guilty plea, and denied in part as to the guilty pleas of testifying co-defendants.

McDade's second motion *in limine* seeks exclusion of the "co-conspirator's out-of-court statements unless the government presents substantial independent nonhearsay evidence of conspiracy and defendant's connection to it." McDade's Motion, ¶ 6. McDade further cites *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177, 194 (2004) for the proposition that the right to confrontation under the Sixth Amendment "requires that testimonial, out-of-court statements by witnesses be barred unless the witnesses are not available at trial and the defendant has had a prior opportunity to cross-examine those witnesses." McDade's Motion, ¶ 8. The Government responds indicating that it will comply with Federal Rule of Evidence 801(d)(2)(E) and establish by

3

preponderance of the evidence the existence of the conspiracy, its members and the statements of co-conspirators and that it is possible in the order of evidence at trial to present such co-conspirators' statements subject to later presenting evidence of the conspiracy and its members. Government's Response, pp. 2-4.

Federal Rule of Evidence 801(d)(2)(E) reads in pertinent part:

> A statement is not hearsay if— (2) The statement is offered against a party and is...(E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statements shall be considered but are not alone sufficient to establish...the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

This rule makes it clear that the statement of a coconspirator is not sufficient to establish the conspiracy's existence, the declarant's membership within the conspiracy as well as a defendant's membership as a co-conspirator. For co-conspirator's statements to be admitted, the Court must determine the following:

> In determining whether the co-conspirator exception applies in a particular case, the trial court must determine, by a preponderance of the evidence, that there was a conspiracy between the declarant and the party against whom the evidence is offered; and that the hearsay statements sought to be admitted were made during the course of the conspiracy and in furtherance of its goals. *Bourjaily v. United States*, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 2778-79, 97 L.Ed.2d 144 (1987).

*U.S. v. Gambino*, 926 F.2d 1355, 1360 (3d Cir. 1991). Although such preliminary matters are determined by the trial judge based upon a showing of a preponderance of the evidence of these elements, they may be proven after admission of the declarant's statements. *See In Re Fine Paper Antitrust Litigation* 685 F.2d 810, 820-821 (3d Cir. 1982). However, the Third Circuit has cautioned that admission of statements subject to later introduction of the prerequisites under the rule "should be

4

used sparingly" *id.* at p. 821 (*see also United States v. Continental Group, Inc.*, 603 F.2d 444, 457 (3d Cir. 1979)), but the order of proof on such issues is within the court's discretion. *United States v. Ammar*, 714 F.2d 238, 246 (3d Cir. 1983).

In light of the fact that the only charge pending against McDade is a conspiracy charge and should the Government seek to introduce evidence of the existence of a conspiracy subsequent to introducing the statements of co-conspirators, but never produce evidence to that effect, the possibility of a mistrial is not an issue as an acquittal would be proper. Moreover, even if a conspiracy is proven to exist, but McDade is never proven to be a member despite the admission of the co-conspirators' statements, acquittal of McDade would again be in order and the case would never reach the jury. The existence of a conspiracy and McDade's membership in it are crucial not only to admission of co-conspirator statements but to the Government's burden of proof at trial. This trial is expected to last no more than five days. With all of the Government's evidence concentrating on the existence of the conspiracy and McDade's alleged place within it, it would be inefficient to cause the Government to produce the same evidence twice because if it failed once to establish the conspiracy or McDade's membership, there would be no need for a trial, and a mini-trial would have occurred. If the Government were successful in a pretrial hearing, it would have to conduct the same exercise again at trial. Although the Government's proffers for its witnesses and their identities are currently under seal, the Court notes that much of the evidence to be offered will be repetitive if offered prior to and during trial.

The only scenario that the Court can conceive that would result in prejudice to the Plaintiff would be where the Government has rested it case, the co-conspirators statements were introduced into

5

evidence, a conspiracy, including McDade's membership in the conspiracy, was established, but the statements are not proven to be in furtherance of the conspiracy or they were made outside of the existence of the conspiracy. In that situation, the Government may be able to establish their burden of proof beyond a reasonable doubt to the charge of conspiracy but the statements remain as hearsay and inadmissible. A jury instruction at that point may not be able to cure any prejudice to McDade for the statements' admission and a mistrial might be the only recourse that could correct the prejudice. Considering the number of the possible Government witnesses who may have varying and incomplete knowledge of the conspiracy, the Court believes it is still advantageous not to conduct a *James*[1] hearing or otherwise hold the Government to a certain order of production of evidence. The Government will be permitted to produce its evidence at trial in any order it deems best, but will be subject to a possible order of mistrial should it decide to introduce co-conspirators' statements without subsequently linking the statements with proof that they were made during or in furtherance of the conspiracy at issue. The Court has presented this same analysis and came to the same conclusion previously in *United States v. Cheatham*, 500 F.Supp.2d 528, 536-537 (W.D.Pa. 2007)

Finally, it cannot be gainsaid that the Court will comply with the dictates of *Crawford, supra* and the law on admissibility of testimonial statements under the Sixth Amendments.

Therefore, McDade's second motion is denied.

McDade's third motion *in limine* is a request for exclusion of any co-conspirator statements "that were not made in furtherance of or during the course of the conspiracy." McDade's Motion ¶ 9.

---

[1] *United States v. James*, 590 F.2d 575, 581-582 (5th Cir. 1979).

6

McDade specifically requests exclusion of any potential co-conspirator statements after December 6, 2005, the end date of the conspiracy as alleged in the indictment. McDade's Motion, ¶ 10; *see also* Redacted Indictment (Document No. 2), p. 1. The Government produces the same argument as it did for McDade's second motion *in limine*. Government's Response, pp. 4-6.

The Court has already analyzed this issue above and would certainly exclude any statements of co-conspirators that were made outside of the conspiracy or that were not in furtherance of the conspiracy. The Court agrees that statements alleged to be co-conspirator statements made after December 6, 2005 would not conform to the allegation of conspiracy in the indictment and would not be admissible under Federal Rule of Evidence 801(d)(2)(E). To this extent, McDade's motion is granted in part, and otherwise denied in part.

McDade's fourth motion *in limine* seeks production of the grand jury transcripts from this matter based upon her need to prepare for trial in the absence of what she refers to as "scant information implicating [her as] contained in the Rule 16 material". McDade's Motion, ¶ 14. The following two quotations set forth the law in this circuit concerning production of grand jury transcripts prior to trial:

> Since the Supreme Court's decision in *Dennis v. United States*, 384 U.S. 855 (1966), there has been a liberalization in the discovery of grand jury testimony. This trend culminated in the passage of Section 102 of the Organized Crime Control Act of 1970, P.L. 91-452, 84 Stat. 922, which amended the Jencks Act, 18 U.S.C. § 3500(e) to provide for the disclosure of grand jury testimony of a witness after he has testified. *United States v. Farries*, 328 F.Supp. 1034, 1037 (M.D.Pa.1971), *aff'd* 457 F.2d 1057 (3d Cir. 1972). However, the statutory change did not affect pre-trial discovery of such testimony. It is still governed by the provisions of F.R.Crim. P. 6(e), which permit discovery "preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." [6] Therefore, there may be pre-trial discovery of the testimony of a witness when it relates to the dismissal of the indictment. *United States v. Hughes*, 413 F.2d 1244 (5th Cir. 1969), *vacated as moot sub nom United States v. Gifford-Hill-American*, 397 U.S. 93 (1970); *United States v.*

*Wolfson*, 294 F.Supp. 267, 271 (D.Del.1968), or upon a showing of substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury. *United States v. Politi*, 334 F.Supp. 1318, 1322 (S.D.N.Y.1971); *United States v. Dioguardi*, 332 F.Supp. 7, 20 (S.D.N.Y.1971). *See generally*, 8 Moore's Federal Practice ¶6.05. Further, mere speculation that such improprieties may have occurred will not suffice to support that required showing. *cf. United States v. Wolfson, supra*, at 271.

> [6] It has been argued that Section 102 has limited pre-trial discovery of grand jury testimony. That position is based on the purported effect of the amendment on subsection (a) of the Jencks Act, 18 U.S.C. § 3500(a) and on F.R.Crim.P. 16(b). However, we do not believe that either provision was affected by the amendment. Section 3500(a) bars the disclosure of any statement it covers until the witness has testified at trial. But the amendment worked by Section 102 changes the definition of the word "statement" to include grand jury testimony only with regard to subsections (b), (c) and (d). F.R.Crim.P. 16(b) "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500 [the Jencks Act]." A witness' grand jury testimony does not fall into either general category. *But see, United States v. Hughes*, 413 F.2d 1244, 1255 (5th Cir. 1969), *vacated as moot sub nom United States v. Gifford-Hill-American*, 397 U.S. 93, 90 S.Ct. 817, 25 L.Ed.2d 77 (1970).

The appellants' request for pre-trial discovery did not fall within the foregoing limitations. We do not decide here whether there are other situations where particularized need for such testimony in a pre-trial context might be demonstrated. We are satisfied that in this instance the defendants have failed to evince a sufficient showing before the district court for the transcripts they desired.

*U.S. v. Budzanoski*, 462 F.2d 443, 454 -455 (3d Cir. 1972).

It is settled federal policy that the grand jury system requires secrecy of grand jury proceedings. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19, 99 S.Ct. 1667, 1672-73, 60 L.Ed.2d 156 (1979); *In re Grand Jury Investigation*, 610 F.2d 202, 213 (5th Cir. 1980). Rule 6(e) [2] of the Federal Rules of Criminal Procedure is intended to preserve this norm of secrecy by preventing the disclosure of matters occurring before a grand jury. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398-99, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959). The policy of secrecy is "designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative

process." *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). Two consequences follow. On the one hand, Rule 6(e) applies not only to information drawn from transcripts of grand jury proceedings, but also to anything which may reveal what occurred before the grand jury. *See, e.g., In re Grand Jury Investigations*, 610 F.2d 202, 216-17 (5th Cir. 1980). Both the direct and indirect disclosure of information are proscribed. On the other hand, grand jury secrecy does not "foreclose from all future revelations to proper authorities the same information or documents which were presented to the grand jury." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960). *See also, SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Secrecy is not absolute, and Rule 6(e) has built-in exceptions, one of which, Rule 6(e)(3)(C)(i), lifts the veil of secrecy where disclosure of grand jury transcripts and evidence is "directed by a court preliminary to or in connection with a judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i); *see Douglas Oil Co., supra*, 441 U.S. at 220-21, 99 S.Ct. at 1673-74; *see also, In re Grand Jury Proceedings*, 654 F.2d 268, 271-75 (3d Cir.), *cert. denied*, -- U.S. --, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

[2] Rule 6(e) of the Federal Rules of Criminal Procedure in relevant parts states:

(2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) Exceptions.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made-

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time and under such conditions as the court may

direct.

In balancing the secrecy requirement with the need for grand jury transcripts, the Supreme Court has stated:

Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Douglas Oil Co., supra*, 441 U.S. at 222, 99 S.Ct. at 1674. The seeking party must set forth a "particularized" need for the desired disclosure. [3] *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958). Once a party makes the required showing of need, the district court must weigh the competing interests and order so much disclosure as needed for the ends of justice. In undertaking such a determination, the district court "necessarily is infused with substantial discretion." *Douglas Oil Co.*, 441 U.S. at 223, 99 S.Ct. at 1675; *see Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959).

> [3] Some courts, following *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), have required that the "particularized" need also be "compelling." See, *e.g., In re Disclosure of Evidence*, 650 F.2d 599, 601 (5th Cir. 1981). The Court has specifically refrained from dealing with the continuing validity of the "compelling need" requirement of *Procter & Gamble*. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 224 n.14, 99 S.Ct. 1667, 1675 n.14, 60 L.Ed.2d 156 (1979). We do not deal with this question since our decision would be unchanged even if a weaker standard of need were imposed.

*In re Grand Jury Matter*, 682 F.2d 61, 63-64 (3d Cir. 1982).

The Government responds to McDade's request for the grand jury transcripts indicating that it will comply with "18 U.S.C. § 3500 [and the] Court's Amended Pretrial Order [of] October 4, 2007." However, 18 U.S.C. § 3500(a) provides no protection as the Third Circuit stated in *Budzanoski*. Nevertheless, while 18 U.S.C. § 3500(a) would not prevent the discovery of a statement from a grand

10

jury proceeding, the Third Circuit requires a showing of a particularized need in making a request for grand jury transcripts pursuant to Federal Rule of Criminal Procedure 6(e)(2)(E)(i), that is "disclosure...of a grand jury matter: (i)preliminarily to or in connection with a judicial proceeding." See McDade's Motion, ¶ 11.[2]

Although McDade cites *Dennis* for the proposition that she has a particularized need for the grand jury transcripts from this matter, *see* McDade's Motion ¶ 13, the Court fails to see a particularized need in McDade's claims that such transcripts are necessary for trial preparation because of the Government's limited information relating to her in the material produced under Federal Rule of Criminal Procedure 16. McDade's Motion, ¶¶ 11-14. *Dennis*, citing *Proctor & Gamble*, sets forth bases for particularized need including for purposes of testing credibility, impeachment or refreshing recollections of witnesses. *Dennis* at 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973, 984 (1966). However, it has been recognized that trial preparation is not such a particularized need. *See United States v. Marth*, 42 F.R.D. 432, 433 (S.D.N.Y. 1967). Despite the flaw in the Government's argument for the application of 18 U.S.C. § 3500, the Court agrees with the *Marth* court and will deny McDade's motion for a lack of particularized need. If courts were to find that trial preparation is a particularized need, grand jury transcripts would have to be produced with every discovery package. Such transcripts are not intended for automatic production under the grand jury system of the federal courts.

McDade's fifth motion is essentially a request for material required to be produced under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), including the absence of

---

[2]McDade references "Fed.R.Crim.P....6(E)(i)" which in light of the characters used appears to be a mistyping of Rule 6(e)(2)(E)(i).

11

prosecution, promises of leniency, grants of immunity, motions for departure under United States Sentencing Guideline § 5K1.1 and other related actions agreed to by the Government. McDade's Motion, ¶ 15. The Government agrees to provide such information "when such promises are made and/or are available for disclosure." Government's Response, p. 6.

The Court set January 22, 2008 as the deadline for disclosure of "*Brady/Giglio*" materials and all such materials that were in existence at that time, including those that are part of plea agreements, should have been produced on said date; any promises or agreements entered into after the 22nd continuing through the dates for trial shall be produced immediately to McDade upon their making. McDade's motion is granted.

McDade's sixth motion *in limine* is a request for the Court to order the production of the records of any "juvenile adjudications" of "Darnell Gainey, Consesor Cheatham and Maurice Cheatham", who are expected to be Government witnesses at trial, pursuant to Federal Rule of Evidence 609(d). McDade's Motion ¶ 16. McDade argues that the existence of any "*crimen falsi* juvenile adjudications...are relevant and not too remote in time, and are essential for the jury to assess a fair credibility determination of the witnesses directly impacting the issue of the defendant's guilt or innocence." McDade's Motion ¶ 17. McDade also argues that these records are necessary for her right to confrontation under the Sixth Amendment. *Id.* at ¶ 18. The Government opposes this request because it argues that Rule 609(d) generally does not permit such adjudications to be admitted into evidence and that McDade does not specify "which, if any, juvenile adjudications she would be interested in exploring with the named government witnesses." Government's Response, pp. 6-7.

It first must be noted that F.R.E. 609(d) expressly states that "juvenile adjudications [are]

12

generally not admissible...." However, without any knowledge of the content of the juvenile records of these three potential witnesses, the Court is without any basis to conclude that these potential witnesses have *crimen falsi* juvenile adjudications as sought by McDade let alone whether the narrow circumstances of F.R.E. 609(d) are present to permit the revelation of juvenile adjudications to McDade for purposes of her defense. Therefore, the Government shall immediately produce to the Court for *in camera* inspection any records of juvenile adjudications for their potential witnesses Darnell Gainey, Consesor Cheatham, and Maurice Cheatham. After such inspection, the Court will determine if any *crimen falsi* adjudications exist within these potential witnesses' juvenile records, and if so, whether production of such juvenile adjudication records is permitted by F.R.E. 609 based upon McDade's stated purposes for her request.

McDade's seventh motion *in limine* seeks an order of court permitting the jury to view McDade's residence at 1070 Jacoby Street in Johnstown, Pennsylvania where it is alleged that "contraband" was found. McDade's Motion, ¶ 19. McDade offers that a view of the property is necessary to "the jury's comprehension of recovery of the evidence and understanding of testimony relating thereto...." McDade's Motion, ¶ 20. The Government disagrees with the need for a view as it would "cause undue delay...and result in the needless presentation of cumulative evidence." Government's Response, p. 7. The Government believes there are alternatives to describing this property including "video footage," "photographs" and testimony. *Id.* at pp. 7-8.

There is a dearth of case law regarding requests for views before the district courts in the Third Circuit, but the following analysis from an unpublished opinion reveals some guidance for the present request:

13

As the First Circuit has stated, "a federal court, exercising its inherent powers, may allow a jury in either a civil or a criminal case to view places or objects outside the courtroom." *Clemente v. Carnicon-Puerto Rico Management Assocs., L.C.*, 52 F.3d 383, 385 (1st Cir.1995). However, a District Court's decision to disallow a jury view "is highly discretionary." *United States v. Triplett*, 195 F.3d 990, 999 (8th Cir.1999); *see also Clemente*, 52 F.3d at 386; *United States v. Passos-Paternina*, 918 F.2d 979, 986 (1st Cir.1990). In *Passos-Paternina*, the Court affirmed the District Court's denial of the jury view due to the "dangerousness" of the site in question (a ship) and "the availability of sufficient testimonial evidence about the vessel." *Passos-Paternina*, 918 F.2d at 986 (emphasis added); *see also United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir.1987) (upholding the District Court's denial of a jury view where the site in question had changed due to rain and other circumstances and because the evidence included photographs from the day after the events in question occurred); *Triplett*, 195 F.3d at 999 (upholding the denial of a jury view where the trial evidence included photographs and diagrams of the sites of the defendant's arrests in addition to testimony concerning the circumstances and conditions at those locations at the relevant times).

In light of this case law, we believe that the District Court was well within its discretion in denying Wegmans' request for a jury view of the store premises. In its order denying Wegmans motion for a new trial, the District Court stated: "I felt that a jury view would be time consuming, difficult to control, and I did not think it was necessary in order for the jury to fully appreciate the case, especially in light of the numerous photographs and reports, and the relevant testimony I allowed into evidence." App. at 16. This rationale parallels that upheld by other Circuits. Thus, the District Court did not abuse its discretion in denying Wegmans' motion for a jury view.

*Kelley v. Wegman's Food Markets, Inc.*, 98 Fed.Appx. 102, 104-105, 2004 WL 886261 at pp. *1-2, 2004 U.S. App. LEXIS 8234 at pp. * 4-5 (3d Cir. 2004). This Court finds that there is no basis to order a view at this time. There is no basis to conclude that testimony coupled with pictures or video of McDade's residence at 1070 Jacoby Street cannot be produced to the jury to gain an understanding of the residence. Furthermore, the Court intends to seat twelve jurors, at least two alternates, and their presence at a view of a residence in the month of February will present unnecessary difficulties for the United States Marshal's Service in managing and controlling such a view. However, should McDade believe the evidence presented at trial appears to present an incomplete understanding of the residence

14

at 1070 Jacoby Street, McDade may renew her motion during trial. Therefore, the motion for a view by the jury is denied without prejudice.

Finally, McDade has filed another set of motions entitled Supplemental Motion *in Limine* Defendant's Objections to Notice of 404(b) Evidence (Document No. 314) wherein she objects to the proposed evidence by the Government that it seeks to admit pursuant to Federal Rule of Evidence 404(b). The Government has noticed evidence it intends to admit pursuant to F.R.E. 404(b) as follows: 1) evidence that "during the...charged conspiracy" McDade "actively stored, used, and sold marijuana at her residence of 1070 Jacoby Street" for purposes of "opportunity, intent, plan, knowledge or absence of mistake or accident"; 2) evidence that "during the timeframe of the charged conspiracy, [McDade] introduced a charged co-conspirator to a heroin supplier and then facilitated the purchase of heroin between the supplier and her charged co-conspirator" and that "[s]uch evidence is admissible to show opportunity, intent, plan, knowledge, or absence of mistake or accident"; 3) evidence that "during the timeframe of the charged conspiracy, in addition to the cocaine that was seized from her backyard, heroin was also seized from her backyard and that "[s]uch evidence is admissible to show opportunity, intent, plan, knowledge, or absence of mistake or accident"; and 4) evidence "that in or about August of 2007, defendant, while driving a vehicle, encountered a co-defendant and the co-defendant's 6-year old cousin at a local Sunoco station is Johnstown, Pennsylvania. The co-defendant will testify that defendant said she [McDade] was going to run the co-defendant over with her car since the co-defendant, as well as another co-defendant, were snitches. The co-defendant will also testify that [McDade] then came very close to hitting the co-defendant and her 6-year old cousin with the vehicle defendant was driving. Such evidence is admissible to show intent, knowledge, or absence of mistake

15

or accident." Governments' Notice (Document No. 308), pp. 1-2.

Within this circuit, the courts follow a four part test for determining admissibility of proposed Rule 404(b) evidence: "(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the [district] court must charge the jury to consider the evidence only for the limited purpose for which it was admitted." *Becker v. ARCO Chemical Co.* 207 F.3d 176, 189 (3d Cir. 2000)(citations omitted). The Government has the burden to demonstrate the other bad act evidence relates to the present prosecution:

> If the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one.
>
> \*\*\*
>
> Thus, the burden on the government is not onerous. All that is needed is some showing of a proper relevance. Whereupon the trial court must judge the government's proffered reason, the potential for confusion and abuse, and the significance of the evidence, and decide whether its probative value outweighs its prejudicial effect.
>
> Sampson contends that because his defense was ignorance of the drugs in his jacket, motive, intent and knowledge were not at issue and hence the evidence is irrelevant to these purposes. We disagree. Issues are not irrelevant just because the defense's theory presupposes them to be so. **The parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove to obtain a conviction.**
>
> The government must therefore proffer a logical chain of inference consistent with its theory of the case. The district court, if it admits the evidence, must in the first instance, rather than the appellate court in retrospect, articulate reasons why the evidence also goes to show something other than character. Unless the reason is apparent from the record, a mere list of the

16

purposes found in Rule 404(b) is insufficient. The district court must put a chain of inferences into the record, none of which is the inference that the defendant has a propensity to commit this crime.

The district court failed to do so and, hence, it erred. **It only said that the evidence "fall[s] within the purview of the exceptions listed in 404(b)." This conclusion may have been sufficient had the government thoroughly explained its basis for admission, because we could then infer that the district court adopted the government's proffered reason. But the government did not do this. It essentially recited, as it does on appeal, the litany of "knowledge, intent, absence of mistake, etc." without explaining how that evidence relates to the recited purposes. That is not enough. Relevance is not an inherent characteristic,** *Huddleston,* **485 U.S. at 689, 108 S.Ct. at 1501; nor are prior bad acts intrinsically relevant to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."** Relevance is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence.

*U.S. v. Sampson,* 980 F.2d 883, 887, 888 (3d Cir. 1992)(emphasis added).

The Government has failed to present the logical chain of inferences with respect to its four pieces of evidence and as such the Government's proffered Rule 404(b) evidence is excluded. Until the Government explains its evidence, its purpose and relevance to the Defendant's alleged conspiracy are not of record and all of its Rule 404(b) evidence proffered in its Notice at document number 308 will be excluded at the time of trial. McDade's Supplemental Motion *in Limine* (Document No. 314) is granted without a hearing.

17

**AND NOW**, this 1st day of February, 2008, in consideration of Defendant McDade's Motions *in Limine* (Document No. 295) and her Supplemental Motion *in Limine* Defendant's Objections to Notice of 404(b) Evidence (Document No. 314) and in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT:

1) The Motion *in Limine* (Document No. 295) is GRANTED IN PART and DENIED IN PART as more fully stated in the foregoing Memorandum Opinion; and

2) The Supplemental Motion *in Limine* (Document No. 314) is GRANTED and the Government's evidence proffered in accordance with Federal Rule of Evidence 404(b) in its Notice (Document No. 308) is excluded from use at trial without prejudice to the Government to explain at trial how such evidence is relevant to its burden of proof.

BY THE COURT:

*/s/ Kim R. Gibson*

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**