# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| CONSESOR M. CHEATHAM, ) | |
| a/k/a "Skinny", a/k/a "Blue", ) | CRIMINAL NO. 3:2006-29-7 |
| MARISSA M. CHEATHAM, ) | |
| a/k/a "Shell", ) | |
| MAURICE R. CHEATHAM, a/k/a "Reese", ) | |
| ANDREW S. EDWARDS, a/k/a "Drew", ) | JUDGE GIBSON |
| KELLY L. HUFF, ) | |
| BRAHEEM HUGER, a/k/a "Heem", ) | |
| JENNIFER MCDADE, and ) | |
| NATHAN L. WILLS, a/k/a "Nate", ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on Defendant McDade's Motion for New Trial (Document No. 435). The Government opposes the motion. See "Response of the United States...." (Document No. 456). The Defendant's Reply Brief (Document No. 457) has not been considered in light of the absence of permission to file said brief in accordance with the Court's practices and procedures. See http://www.pawd.uscourts.gov/Documents/Public/Reference/gibson.pdf, p. 3.

McDade presents two arguments in support of her motion: 1) the Court improperly refused to charge the jury with one of McDade's proposed charges that is claimed to be consistent with her theory of her defense; and 2) the Court improperly sustained the Government's objection to McDade's proposed questioning of cooperating co-defendants regarding their understanding of how the United States Sentencing Guidelines would apply in their eventual sentencing.

Motions for a new trial are governed by Federal Rule of Criminal Procedure 33 which reads in pertinent part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The 'decision to grant or deny a motion for a new trial lies within the discretion of the district court,' *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir.2006)...." *U.S. v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007).

On the first issue, the Court agrees with the Defendant that the jury charge set forth in *United States v. Chaney*, 446 F.2d 571, 575 (3d Cir. 1971), that is "the sudden unexplained acquisition of wealth by an impecunious person at or about the time of a theft which he had an opportunity to commit, is competent evidence of guilt and will support conviction" is applicable in prosecutions other than for "theft". *See United States v. Adames*, 59 Fed.Appx. 442, 445 (3d Cir. 2003)(applying the charge in a drug conspiracy prosecution under 21 U.S.C. § 846). However, the Defendant argues that the inverse of this jury charge is a correct instruction and one that was applicable to her theory of the case and should have been given to the jury in the case *sub judice*. The Defendant argues that while "the reverse concept does not work in every case", it was applicable in her defense in light of "quit[ing] her great job to care for her son...." Motion, p. 3 n. 2.

"The district court has wide discretion in charging the jury. We will find that the court erred in refusing to give an instruction only if the instruction was correct, not substantially covered by other instructions, and was so important that the omission of the instruction prejudiced the defendant." *U.S. v. Smith*, 789 F.2d 196, 204 (3d Cir. 1986)(citation omitted). The Court would agree that the defendant's proposed instruction would have been benficial to the Defendant's theory of the case, *see Government of Virgin Islands v. Carmona*, 422 F.2d 95, 99 n. 6 (3d Cir. 1970)("As long as there is an

2

evidentiary foundation in the record sufficient for the jury to entertain a reasonable doubt, a defendant is entitled to an instruction on his theory of the case.")(citations omitted), but the Third Circuit in *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999) recognized that error occurs only if the three prongs of the test in *Smith* are met.

The Court finds that the proposed instruction was improper because it was not necessarily a correct statement of the law. On further reflection, the Court believes that such inverse of the charge from *Chaney* and *Adames*, particularly in a drug conspiracy case such as this, may be relevant, but not required. It has been known that members of drug conspiracies do take payment through methods other than cash, including payment by being supplied controlled substances for the members' personal use. There was no such testimony that payment was made by controlled substances in the case *sub judice*, but the Court offers this as one example, in a drug conspiracy, that would refute the correctness of the inverse of the charge set forth in *Chaney* and *Adames*. However, in the case *sub judice* there was testimony from Consesor Cheatham that he gave cash to the Defendant because she was complaining that the supplier was not paying her enough to transport drugs to Consesor. Transcript (Document No. 453), p. 18. Consesor also testified that he paid some bills for the Defendant when he stayed at her home for approximately two weeks. Transcript, p. 24. Still the evidence adduced at trial that the Defendant quit her job, suffered foreclosure on her home and repossession of her automobile does not preclude the fact that she received the quantities of money that Consesor testified to while on the stand. Therefore, the fact that the Defendant's bills eventually went unpaid beginning in the fall of 2005 does not cause this requested instruction to become correct in light of her receipt of some cash from

Consesor.[1]

Furthermore, even if the instruction was correct, there was not prejudice suffered by the Defendant. Defense counsel properly argued the absence of income in his closing argument to the jury and was not precluded from presenting his theory of the case, albeit only under the umbrella of a general circumstantial evidence instruction provided by the Court. To the extent that the Defendant was still able to make the argument that she was not guilty because she obtained no monetary fruits of the drug conspiracy, the general charge on circumstantial evidence substantially covered the issue. The motion is denied on this issue.

Turning to the second issue, the Court's sustaining of the Government's objection to the Defendant's questioning of Government witnesses regarding their knowledge of how the sentencing guidelines apply in light of their cooperation, the motion will also be denied.

The Defendant argues her right to confrontation under the Sixth Amendment was abridged with the Court's sustaining of the Government's objection. The Court restricted to some degree the Defendant's cross-examination of Government witnesses who had entered into plea agreements with the Government. The Court's restriction prohibited the Defendant from inquiring from the witnesses their knowledge of how the sentencing guidelines would apply to their criminal conduct in light of their criminal history in order to establish that their cooperation would result in a favorable deviation from the recommended guideline range. The Court did permit the Defendant to inquire as to the statutory

---

[1] Additionally, the inverse of the *Chaney/Adams* instruction is questionable as a bona fide instruction due to the fact that if a defendant suffers economic hardship, this does not establish that she did not have an adequate income. Although an unexplained acquisition of wealth establishes the receipt of income through some unknown source, the lack of wealth can be explained not only by a lack of income, but also by an unwise use of that income.

4

mandatory minimum and maximum sentences that would apply to the Government's witnesses and how their cooperation could result in a sentence less than the maximum and also possibly less than the mandatory minimum sentence required for their pleas of guilty. The Defendant argued at trial that her right of confrontation should permit questioning regarding the specifics of the applicable guideline ranges and reiterates that argument in her motion citing to *United States v. Chandler*, 326 F.3d 210 (3d Cir. 2003) and *United States v. Throckmorton*, 269 Fed.Appx. 233 (3d Cir. 2008).

*Chandler* found that the Sixth Amendment right to confrontation was violated when the defense attorney was prevented from cross-examining two witnesses regarding what they expected from the Government in return for their cooperation. *Chandler* at 221-222. The *Chandler* court recognized that it need not "resolve whether the Confrontation Clause entitles a defendant categorically to inquire into the 'concrete terms' of a cooperating witness's agreement with the government, including the specific sentence that witness may have avoided through his cooperation" but rather only concerned itself with "the magnitude of the sentence reduction [the witnesses] believed they had earned, or would earn, through their testimony". *U.S. v. Chandler*, 326 F.3d 210, 221 (3d Cir. 2003). The *Chandler* court found the trial court's restriction to be unreasonable under the Sixth Amendment and that the error was not harmless, thus warranting a new trial. *Chandler* at 223-225.

The *Throckmorton* court recognized that its issue was indistinguishable to that in Chandler:

Robert Gailey merely acknowledged that by testifying he believed he would be offered some leniency, but was never asked to provide the jury with any estimate of the punishment he would otherwise be facing. And, just as in *Chandler*, this deprived the jury of any frame of reference to evaluate his motive to cooperate. For this reason, we believe that when the District Court prevented any cross-examination on this topic, it significantly limited Throckmorton's right to inquire into Gailey's motivation for testifying.

5

*United States v. Throckmorton*, 269 Fed.Appx. 233, 236 (3d Cir. March 18, 2008)(citation omitted).

The Court agrees with the Defendant that *Chandler* was decided prior to *United States v. Booker* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621(2005) and *Throckmorton* was decided subsequent to *Booker*, the Court finds that neither directly addressed the limitation of the inquiry regarding the sentencing guidelines at issue in the case *sub judice*.

> District courts retain " 'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir.2005) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). In deciding whether a specific limitation violates a defendant's rights under the Confrontation Clause, we consider "(1) whether the limitation significantly limited the defendant's right to inquire into a witness's motivation for testifying; and (2) whether the constraints imposed fell within the reasonable limits that a district court has the authority to impose." *Id*. (citation omitted).

*United States v. Harris,* 471 F.3d 507, 513 (3d Cir. 2006). The Defendant asserts that the change in the mandatory nature of the sentencing guidelines with the arrival of the *Booker* decision does not impact her right to cross-examine the Government's cooperating witnesses concerning their knowledge of the application of the sentencing guidelines to their sentences and that this Court's restriction of cross-examination of those cooperating witness to only the statutory ranges of punishment "is an inadequate substitute" for the jury to evaluate the presence of possible bias. Motion, pp. 8-10.

Both *Chandler* and *Throckmorton* concerned the inability to question the Government cooperating witnesses regarding their potential sentences absent any cooperation, *see Throckmorton* at 236, but defense counsel in the case *sub judice* did question the Government's cooperating witnesses regarding the statutory ranges of sentences they were facing, specific terms in their plea agreements

6

including the potential for a future motion under Federal Rule of Evidence 35 for a reduction below the mandatory minimum sentences. *See e.g.*, Transcript, pp. 81-82. However, defense counsel was not permitted to discuss specific ranges of punishment under the sentencing guidelines that would apply to the witnesses based upon their criminal history, their pending charges and possible reductions for cooperation. The statutory ranges provided a reasonable reference for the jury concerning the possible period of incarceration which the witnesses would be subject to and defense counsel was permitted to inquire as to the possibility that reductions from those periods of incarceration could occur based upon cooperation, even reductions from the mandatory minimum sentences. The testimony of Consesor Cheatham provides an example: defense counsel was permitted to question Consesor on his "expectations" from cooperating, by pointing to specific language in the plea agreement, but Consesor responded stating that he is not expecting the Government to seek a lower term of imprisonment in exchange for his cooperation despite the fact that it is possible under his plea agreement. Transcript, pp. 81-83. Despite the lack of expectation on the part of witnesses, the jury received testimony regarding the statutory minimum and maximum sentences to establish a reference point from which they could judge how beneficial the fact of cooperation would be to the witnesses.

The restriction of questioning concerning sentencing guidelines calculations was based upon the fact that such a calculation was part of the presentence reports of the witnesses that defense counsel was denied access to and which had not been finalized and adopted by the Court as to each of the witnesses. Prior to the *Booker* decision, the sentencing guidelines played a mandatory role in sentences meted out by district courts, but even at that time the district courts had to approve the sentencing guidelines calculation prior to the imposition of sentence and the guideline range could not exceed the

7

maximum sentence set forth by statute. With the presentence reports of the witnesses being excluded from evidence at trial, *see* Memorandum Opinion and Order of Court (Document 393), and the plea agreement referencing certain sections of the sentencing guidelines, but not calculating the final range of imprisonment while also referencing maximum terms, including Consesor's maximum possible term of life imprisonment, the Court permitted defense counsel to inquire as to the worst possible scenario for the cooperating witnesses absent their cooperation. When the witness cooperation is highlighted against this backdrop, no matter what the maximum sentence could be, in a practical sense it would seem clearly to be a less effective tactic to question a cooperating witness on a sentencing guideline range, yet unapproved by the Court, that cannot legally be more significant that the maximum sentence and in all likelihood will include a maximum term less than the maximum statutory limit. Under these circumstances, the Court cannot conclude that the Defendant's right to inquire into witnesses' motivation was significantly limited.

Turning to the constraint imposed upon Defense counsel's cross-examinations of the Government's cooperating witnesses, the limitation was minimal. The Court sought to remove any consideration by the jury of a matter that had yet to be determined by the Court and which was not part of the plea agreement between a witness and the Government. Defense counsel sought to develop an understanding of how the cooperation of a witness would help him or her gain reductions in their sentences. This was accomplished through the permitted questioning on the terms of the plea agreements and the applicable statutory ranges of imprisonment set forth in those plea agreements. The prohibited questioning on the subject of the sentencing guidelines stemmed from the confidentiality of the presentence reports and the absence of the Court's final adoption of the guidelines as proposed by

8

the United States Probation Office. This limitation was minimal considering the inherently beneficial effect that presenting the broader statutory range of punishment to the jury and the possibility that the Government would move to have the Court reduce the proposed sentences below statutory mandatory minimums. With the ability to broach the subject of potential incarceration with a more ominous potential term than that of the sentencing guidelines certainly permitted the Defendant to contrast the potential punishment with the imperative necessity of the Government's cooperating witnesses to in fact cooperate or suffer a possible statutory maximum sentence. Therefore, both of the factors set forth in *Harris* present circumstances that do not provide a basis to conclude that the Defendant's right to confrontation of Government's cooperating witnesses was infringed by the limitations set by this Court.

AND NOW, this 2nd day of September 2008, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant's Motion for New Trial (Document No. 435) is DENIED.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

9